```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| BAKERY, CONFECTIONARY, : | |
| TOBACCO WORKERS & GRAIN : | |
| MILLERS INT'L UNION, AFL-CIO, : | |
| CLC LOCAL 6, : | |
| : | CIVIL ACTION |
| Petitioner, : | |
| : | NO. 10-CV-5141 |
| v. : | |
| : | |
| MORABITO BAKING CO., : | |
| : | |
| Respondent. : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                            **May 16, 2011**

Before the Court are Petitioner's Petition to Compel Labor Arbitration (Doc. No. 1), Respondent's Response in opposition thereto (Doc. No. 5), and Petitioner's Reply in further support thereof (Doc. No. 7). For the reasons set forth in this Memorandum, the Court grants the Petition.

## I. BACKGROUND

Petitioner, the "duly-recognized bargaining agent of a bargaining unit of the [Respondent] Company's employees," (Pet. ¶ 5, Doc. No. 1), disputes the termination of one of Respondent's employees. At all relevant times, Petitioner and Respondent were parties to a collective bargaining agreement (CBA) that provided, among other things, a mechanism for the resolution of any disputes that arose between them during the pendency of the agreement. Of particular relevance to the pending Petition, the

CBA provided that an "[e]mployee shall file a written grievance and discuss the grievance with his/her supervisor for the purpose of settling the grievance within ten (10) working days." (Pet. Ex. 1, at 9, Doc. No. 1.)[1]

It is undisputed that employee James Witiak was suspended on February 24, 2010, and subsequently terminated. The reason given by Respondent was that Witiak had committed theft by giving away

---

[1] The full text of the dispute-resolution provision reads,

A) The parties agreed to work together for the promotion of the baking industry and to adjust all difficulties that arise during the life of this Agreement between the parties wherever possible. To this end, it is understood that the Union will designate a representative or representatives to deal with the management of the Company in the handling of grievances, complaints or disputes. It is agreed that the management and the Union Representatives will attempt to make adjustments as promptly as possible and that in case of failure to reach such adjustment, the matter shall be submitted to the proper officials of the Company and Union. In case, however, any disagreement or difficulty shall arise between the parties hereto during the term of this Agreement, and in any matter connected with this Agreement which cannot be adjusted directly between the parties as herein before provided, the difference shall be referred to three (3) arbitrators, one (1) of whom shall be chosen by the Company, one (1) by the Union and the third (3rd) by these two (2). The decision of the majority of this Board shall be final and binding upon both parties.

B) Employee shall file a written grievance and discuss the grievance with his/her supervisor for the purpose of settling the grievance within ten (10) working days.

C) Upon receipt of a written grievance, the company representative will have five (5) working days to reply in writing. A failure by the Company (not excused by the Union) to reply within those five (5) working days, shall entitle the Union to an award in favor of the Union by default. Upon receipt of the written reply from the Company. [sic] The Grievance then will be discussed by the general manager or his/her designee and the union business agent within five (5) working days unless mutually agreed to extent [sic]. The Union will have fifteen (15) working days to submit the grievance to arbitration on condition that a written request for arbitration is submitted prior to the expiration of the fifteen (15) working days. The costs of the arbitration proceeding shall be borne equally by the Company and the Union.

(Pet. Ex. 1, at 9, Doc. No. 1.)

company product. It is also undisputed that a meeting regarding the alleged theft and suspension took place on March 2, 2010, at which representatives of both parties were present. While the parties disagree about the purpose of, and/or what happened at, the meeting, it is also undisputed that Petitioner did not submit a written grievance to Respondent until March 31, 2010.[2]

On April 8, 2010, Petitioner filed a demand for arbitration of the termination dispute with the American Arbitration Association. Respondent objected to the demand, asserting that Petitioner had not followed the CBA dispute-resolution procedure-specifically, the time limits-and that the dispute was therefore outside the scope of the arbitration agreement. Petitioner thereafter filed suit in this Court, seeking an order to compel arbitration of the termination dispute.

## II. STANDARD OF REVIEW

Under the Federal Arbitration Act, "[a] party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction

---

[2] Petitioner asserts that, "[d]uring a meeting on March 2, 2010, the Union notified the Company that the Union was arbitrating the dispute, and that it would later submit a written grievance to the Company." (Pet'r's Mem. 3.) Having later submitted a written grievance, Petitioner asserts that it properly "grieved Witiak's termination, both verbally and in writing." (Id.) According to Respondent, "[t]he March 2, 2010 meeting was a termination hearing and at no time did Witiak or the Union grieve the termination. The Union's business agent was in contact with Morabito Baking Co. on February 25, 2010, March 2, 2010, March 9, 2010 and March 15, 2010, but at no time did the Union attempt to grieve the matter before March 31, 2010." (Resp. ¶ 8.)

3

. . . , for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4 (2006).

The district court's role is very limited in these cases. The court is not to consider the merits of the underlying dispute that gave rise to the demand for arbitration. See, e.g., AT&T Techs., Inc. v. Commc'n's Workers, 475 U.S. 643, 649-50 (1986) ("Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator."). Rather, "[t]he court's role . . . [is] to determine whether the underlying subject matter of the grievance was arbitrable." Bell Atl.-Pa., Inc. v. Commc'n's Workers, Local 13000, 164 F.3d 197, 201 (3d Cir. 1999). Thus, the court's threshold role is to determine whether the respondent's refusal to arbitrate is premised on a substantive or a procedural ground.[3]

If the refusal to arbitrate is premised on a substantive ground, the district court must conclude that the issue is "substantively arbitrable" before it may order the underlying dispute submitted to an arbitrator. See, e.g., AT&T Techs., 475 U.S. at 649 ("[T]he question of arbitrability–whether a

---

[3] See Indep. Ass'n of Cont'l Pilots v. Cont'l Airlines, 155 F.3d 685, 692 (3d Cir. 1998) ("The term 'substantive arbitrability' . . . is used to describe the question whether the parties' dispute involves a subject matter that is within the ambit of a contractual arbitration agreement.").

4

collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance–is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (reasoning that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" (internal quotation marks omitted)); Bell Atl., 164 F.3d at 201 ("[I]f an arbitrator were to decide the substantive arbitrability issue, a party objecting to having the underlying dispute submitted to arbitration on the ground that it did not consent to do so would already have its alleged intent (to not submit the dispute to arbitration) ignored.").

If the refusal to arbitrate is premised on a procedural ground, however, the procedural issue is for the arbitrator to resolve (along with the merits of the dispute, should the arbitrator find no procedural bar to addressing the underlying dispute); the court cannot resolve the procedural question and must simply order arbitration. See Bell Atl., 164 F.3d at 201-02 ("[P]rocedural issues are to be resolved by the arbitrator, once (and only after) the court determines that the underlying dispute is one the parties have agreed to submit to the arbitrator.");

5

see also Howsam, 537 U.S. at 84; John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964).

### III.  DISCUSSION

#### A.  Timeliness of the written grievance

This "court must first determine whether resolution of the [parties'] disagreement is for the court or for an arbitrator to undertake." Bell Atl., 164 F.3d at 200.  Although Respondent argues that the allegedly late filing of Plaintiff's written grievance removes the underlying dispute from the scope of arbitration, more than "[t]hirty years of Supreme Court and federal circuit court precedent have established that issues concerning the timeliness of a filed grievance are 'classic' procedural questions to be decided by an arbitrator." Local 285, Serv. Employees Int'l Union v. Nonotuck Res. Assocs., 64 F.3d 735, 739 (1st Cir. 1995).[4]

Indeed, the Court agrees with Petitioner that this case is indistinguishable from Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d 123 (3d Cir. 1994).  In Troy, the CBA in question provided that (1) no grievance would be accepted for

---

[4] The underlying dispute in this action is whether the termination of Witiak was for just cause.  Because the CBA provides broadly that "any disagreement or difficulty" that arises during the term of the agreement may be resolved through arbitration, (Pet. Ex. 1, at 9, Doc. No. 1), the dispute over Witiak's termination is substantively arbitrable and can only be resolved by an arbitrator.  See, e.g., Int'l Union of Operating Eng'rs, Local 150 v. Flair Builders, Inc., 406 U.S. 487, 491 (1972); Troy Chem. Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 126 (3d Cir. 1994) (holding the dispute over a termination substantively arbitrable when "the CBA speaks of 'any difference, grievance, dispute or complaint'").

consideration unless it was reduced to writing and presented within two working days of the occurrence of the incident causing the grievance, (2) there would then be a conference within three days of the incident, and (3) the matter could be submitted to arbitration if there was no settlement. Id. at 125. The parties disagreed as to whether the district court or the arbitrator should have decided whether the parties had modified the express terms of their CBA by past practice such that the agreement's grievance procedure did not need to be followed. Id. The Third Circuit held that "whether the Union and Troy Chemical had by practice waived steps 1 and 2 of the grievance procedure was a question of procedure for the arbitrator and not the court." Id. at 126. Thus, "[t]he district court erred in deciding the procedural questions and foreclosing that issue from the arbitrator's decision." Id. at 127.

As indicated above, Troy is by no means an outlier in holding that disagreements over compliance with an agreement's grievance procedure are to be resolved at arbitration. See, e.g., Local Lodge No. 595, Int'l Ass'n of Machinists v. Howe Sound Co., 350 F.2d 508, 510-11 (3d Cir. 1965) (stating that "the timeliness of the request for arbitration" was a "matter[] to be decided by the arbitrator," even when "[t]he time for taking the various steps in the grievance procedure culminating in the demand for arbitration ha[d] long since expired"); United

7

Steelworkers v. Black Top Paving Co., No. 88-2396, 1990 U.S. Dist. LEXIS 19949, at *10, 13-14 (W.D. Pa. Apr. 12, 1990) (rejecting the argument that "the arbitration provision is inapplicable because the grievance provision only applies to grievances processed in accordance with the time limitations specified in the grievance procedure," because "the time limitations of the grievance procedure are merely procedural questions, and should be left to arbitral consideration"), aff'd, 932 F.2d 962 (3d Cir. 1991); see also Howsam, 537 U.S. at 81 (holding that the timeliness of a request for arbitration was a question for the arbitrator to resolve); Bell Atl., 164 F.3d at 201 (recognizing that "'whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate'" are "procedural arbitrability issues . . . left to the arbitrator" (quoting John Wiley & Sons, 376 U.S. at 557)).

Hence, the disagreement concerning Petitioner's compliance with the CBA's grievance procedure is a procedural issue that can only be resolved at arbitration. The arbitrator may find that the timing of Petitioner's grievance precludes arbitration of the underlying dispute, but the Court, having found that the subject matter of the dispute falls within the arbitration agreement, must refer the case to arbitration for resolution of the issues.

8

**B. Preclusion**

Respondent makes an alternative argument for denying the petition to compel arbitration: that the doctrines of res judicata and/or collateral estoppel preclude resolution of the underlying dispute because Witiak was denied unemployment compensation benefits before the state Unemployment Compensation Board of Review. (Resp. ¶ 14.)

None of the cases that Respondent cites addresses the preclusive effect of an administrative unemployment compensation hearing. In any event, the preclusive effect of a prior administrative decision is an issue to be resolved by the arbitrator, not this Court. See, e.g., Shell Oil Co. v. CO2 Comm., 589 F.3d 1105, 1109 (10th Cir. 2009) ("The district court correctly determined that the res judicata effect of the original panel's order is an arbitrable issue that should not be decided by a court."); Sherrock Bros. v. DaimlerChrysler Motors Co., 465 F. Supp. 2d 384, 390 (M.D. Pa. 2006) ("Whether preclusive effect is to be given to the prior decisions of the Board [of Motor Vehicle Manufacturers, Dealers, and Sales Persons] . . . was a matter for the arbitrators to decide."), aff'd, 260 Fed. App'x 497, 498-99 (3d Cir. 2008); Road Sprinkler Fitters Union Local 699 v. Grinnell Fire Prot. Sys. Co., No. 94-2905, 1997 U.S. Dist. LEXIS 1543, at *6 (E.D. Pa. Feb. 14, 1997) (ordering arbitration because "the [preclusive] effect of the NLRB proceeding is an

9

issue for the arbitrators to determine"). Thus, this is not an appropriate ground for refusing arbitration.

### C. Attorney's fees

"In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification, or if the party resisting arbitration did not have a 'reasonable chance to prevail.'" Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros., 625 F.2d 1092, 1094 (3d Cir. 1980) (citations omitted).

Although Respondent may ultimately be successful–whether because Petitioner's written grievance was untimely, because of preclusion, or because Witiak's termination was for just cause–the law was at all times clear that Respondent had to resolve these issues before an arbitrator. See supra Sections III.A-B. Indeed, Petitioner had repeatedly informed Respondent before filing the Petition that binding authority, Troy, foreclosed Respondent's timeliness argument. (Pet. Exs. A, B, C, Doc. No. 1.) Respondent nonetheless refused to submit the dispute to arbitration, despite being unable to cite a single case holding that arbitration could be avoided because of alleged noncompliance with a CBA's grievance procedure.[5] As for its

---

[5] While Respondent attempts to distinguish Troy as "clearly different" on the ground that the CBA in that case provided "exceptions" to the timeliness requirement, (Resp't's Mem. 4), this Court's review of the decision does not support Respondent's contention: there was only one exception noted,

preclusion argument, Respondent not only cited no case holding that an unemployment compensation decision has preclusive effect, but ignored cases holding that such a decision does not have preclusive effect, e.g., Rue v. K-Mart Corp., 713 A.2d 82 (Pa. 1998), and that preclusion is an issue for the arbitrator.

By forcing Petitioner to litigate in this Court, Respondent has caused Petitioner to incur unnecessary expenses and has unnecessarily delayed resolution of the underlying dispute. The Court finds that Respondent's opposition to arbitration was without justification. See, e.g., Nonotuck, 64 F.3d at 739 ("Because the law is clear on this [timeliness] issue, and has been for some time, the Company was without justification in refusing to arbitrate the Singh grievance, and in forcing the Union to litigate its arbitrability in federal district court."). An award of attorney's fees and costs is therefore proper.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the Petition to Compel Arbitration and awards Petitioner the attorney's fees and costs incurred in this action.

---

and it was to exclude "grievances involving payroll calculations," a fact that was not in any way relied on by the Court in arriving at its holding. 37 F.3d at 125. Similarly, Respondent's argument that there is "most forceful evidence of a purpose to exclude the claim from arbitration," (Resp't's Mem. 5), is foreclosed by numerous prior decisions. See, e.g., Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 81 (2002); Cont'l Airlines, 155 F.3d at 694; Troy, 37 F.3d at 126.